## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| ALLEN J. MEYER | Chapter:       13 |
|                 Debtor(s) | Case Number:      1-12-bk-04042-RNO |
| ALLEN J. MEYER | |
|              Plaintiff(s) | Adversary Number:    1-17-ap-00138-RNO |
|     v. | |
| WELLS FARGO BANK, N.A., WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as Christiana Trust, not in its individual Capacity, but solely as trustee for BCAT 2015-13BTT, and SELENE FINANCE, LP | Document No.:      14 & 15 |
| | Nature of Proceeding:    Motion to Dismiss Adversary Proceeding |
|             Defendant(s) | |

### OPINION[1]

Allen J. Meyer ("Debtor") filed a two-count Complaint seeking sanctions for alleged noncompliance with Federal Rule of Bankruptcy Procedure 3002.1 and violations of the discharge injunction. In separation motions, all of the Defendants moved to dismiss the Complaint. I will grant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss as to Counts I and II. The Motion to Dismiss filed by Wilmington Savings Fund Society, FSB, Doing Business as Christiana Trust ("Wilmington") and Selene Finance, LP ("Selene") will be denied as to Counts I and II.

---

[1]     Drafted with the assistance of Maria Babajanian, Esq., Law Clerk.

## I.      Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## II.      Facts and Procedural History

The Debtor filed a voluntary Chapter 13 petition on July 10, 2012, and received a Chapter 13 discharge on April 19, 2017. Upon motion of the Debtor, the case was reopened on July 25, 2017, to commence this adversary proceeding against Wells Fargo, Wilmington, and Selene. The Debtor filed a Complaint on August 5, 2017, alleging in Count I that Defendants failed to file and serve notices of fees, expenses, and charges in violation of Rule 3002.1(c) and seeking sanctions under Rule 3002.1(i). The Debtor further alleges in Count II that Defendants violated the discharge injunction pursuant to 11 U.S.C. § 524(a) [2] and § 105 by seeking to collect fees, expenses, and charges post-discharge for which required notices were not filed.

The alleged noncompliance with Rule 3002.1 relates to a secured claim against real property. On November 15, 2012, Wells Fargo filed Proof of Claim No. 7-1, stating that it held a secured claim for $135,714.43, with arrearages of $42,080.82 against real property located at 959 Sunny Hill Lane, Harrisburg, PA 17111 ("real property"). On September 8, 2015, the claim was transferred from Wells Fargo to Wilmington. The Transfer of Claim lists Selene as the mortgage loan servicer for Wilmington.

On September 21, 2017, Wilmington and Selene moved to dismiss the Complaint ("Wilmington's Motion to Dismiss") with prejudice for lack of subject matter jurisdiction and for failure to state claims upon which relief can be granted. Mot. of Def. Wilmington Savings

---

[2]      Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C.§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

2

Fund Society, FSB, Doing Business as Christiana Trust, Not in its Individual Capacity, but Solely as Trustee for BCAT 2015-13BTT, and Def. Selene Finance, LP, to Dismiss Pl.'s Adversary Compl. ("Wilmington's Motion to Dismiss") ¶ 22, ECF No. 14. They further argue that relief is barred under the doctrines of res judicata, estoppel, and waiver, and request an award of counsel fees. Wilmington's Motion to Dismiss 5, ECF No. 14.

On September 21, 2017, Wells Fargo also moved to dismiss the Complaint ("Wells Fargo's Motion to Dismiss"), with prejudice, for failure to state claims upon which relief can be granted. The Debtor withdrew Count II of the Complaint as to Wells Fargo in open court during a hearing held on November 16, 2017, acknowledging in its Brief opposing Wells Fargo's Motion to Dismiss that "Plaintiff concedes that Defendant, Wells Fargo, has engaged in no conduct post-discharge in violation of the discharge injunction."  Br. of Pl. Opposing Mot. of Def. Wells Fargo Bank, N.A. to Dismiss Pl.'s Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bank. P. 7012 ("Plaintiff's Brief Opposing Wells Fargo") 9, ECF No. 20; Tr. of Mot. of Selene Finance Wilmington Savings Fund Society to Dismiss Adversary Proceeding ("Transcript") 4, Nov. 16, 2017, ECF No. 26. I will therefore only consider in this opinion Wells Fargo's Motion to Dismiss regarding Count I of the Complaint.

Briefs have been filed in support of, and in opposition to, the Motions to Dismiss. A hearing was held on November 16, 2017, at which time the parties presented oral argument. The Motions to Dismiss are now ripe for decision.

## III.   Discussion

### A.   Subject Matter Jurisdiction under F.R.B.P. 7012(b)(1)

Wilmington and Selene argue that this Court lacks subject matter jurisdiction on two bases: that the outcome of this proceeding would have no effect on the estate and that under the *Rooker-Feldman* doctrine, this Court is barred from reviewing a state-court judgment.

Federal Rule of Civil Procedure 12(b)(1), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b), requires dismissal if a bankruptcy court lacks subject-matter jurisdiction. The burden is on the plaintiff to prove that jurisdiction exists. *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A court may dismiss an action for lack of subject matter jurisdiction at any time. Fed. R. Bankr. P. 7012(h)(3).

Subject matter jurisdiction can be attacked by a facial or factual challenge. *Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). A facial attack challenges the sufficiency of the pleadings, and the court must accept the allegations in a complaint as true. *Com. Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir.2006)). When considering a facial attack, a court must consider only the allegations of the complaint and attached or referenced documents, in a light most favorable to the plaintiff. *Gould Electronics Inc.* 220 F.3d at 176; *see also In re Kaiser Group Intern. Inc.*, 399 F.3d 558, 561 (3d Cir. 2005). In contrast, when a factual challenge is brought, a defendant is arguing that "the allegations on which jurisdiction depends are not true as a matter of fact." *Cunningham v. Lenape Regl. High Dist. Bd. of Educ.*, 492 F. Supp. 2d 439, 447 (D.N.J. 2007). In reviewing a factual attack, the court may consider evidence outside the pleadings. *Gould Electronics Inc.* 220 F.3d at 176. I view

4

Wilmington and Selene's Motion to Dismiss as a facial attack and will therefore view facts pled in the Complaint in the light most favorable to the Debtor, the non-moving party.

### i. Core Matters

Wilmington and Selene argue that there is no bankruptcy estate because a discharge was entered in the case before it was reopened, and the outcome of this proceeding would therefore not affect a non-existent estate. Mem. Of Law in Supp. of Mot. of Def. Wilmington Savings Fund Society, FSB, Doing Business as Christiana Trust, Not in its Individual Capacity, but Solely as Trustee for BCAT 2015-13BTT, and Def. Selene Finance, LP, to Dismiss Pl.'s Adversary Compl. ("Wilmington's Memorandum") 3, ECF No. 14-1. Wilmington and Selene further argue that the subject property has since been sold and the mortgage has been paid off, therefore the outcome of this proceeding would allegedly have no effect on the estate. Wilmington's Memorandum 3, ECF No. 14-1.

Count I of the Complaint is a request for sanctions under Rule 3002.1 and Count II requests a determination that Defendants willfully violated the discharge injunction pursuant to 11 U.S.C. § 524(a) and § 105. Rule 3002.1 is a bankruptcy rule applicable in chapter 13 cases. *In re Carr*, 468 B.R. 806, 808 (Bankr. E.D.Va. 2012) ("The Purpose of Rule 3002.1 was the provide a prompt, efficient, and cost-effective means to determine whether there is a question as to the status of a debtor's home loan at the conclusion of the chapter 13 case."). Pursuant to 28 U.S.C. § 1334(b), for jurisdiction to exist a proceeding must be related to, or arise in, a bankruptcy case or arise under title 11. *In re Davenport*, 544 B.R. 245, 252 (Bankr. D.C. 2015) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

In *In re Guild and Gallery Plus, Inc.*, the Third Circuit discussed core versus non-core proceedings:

28 U.S.C. § 157(b)(1) provides that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11...." Section 157(b)(2) sets forth a nonexhaustive listing of core proceedings.

. . .

Our circuit precedents have "held that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Marcus Hook Dev. Park Inc.*, 943 F.2d 261, 267 (3d Cir.1991) (citations and internal quotation marks omitted). In support of its ruling that this case was a core proceeding, the bankruptcy court relied, inter alia, on the decision of the Court of Appeals for the Fifth Circuit in *In re Wood*, 825 F.2d 90 (5th Cir.1987), which observed that

> the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*Id.* at 97.

72 F.3d 1171, 1176-79 (3d Cir. 1996). A claim for sanctions under Rule 3002.1 is a core

proceeding because it is matter that would only arise in a bankruptcy case. *In re Exide*

*Technologies*, 544 F.3d 196, 206 (3d Cir. 2008) (finding that core proceedings found in

§ 157(b)(2) include matters which invoke a substantive right provided by title 11 or a proceeding

that could only arise in the context of a bankruptcy case) (citing *Halper v. Halper*, 164 F.3d 830,

836 (3d Cir. 1999)); *In re Odell*, 2009 WL 348508, at *3 (Bankr. D.Kan. 2009) ("If a proceeding

involves a right created by bankruptcy law, or is one that would only arise in a bankruptcy case,

it is a core proceeding. Core proceedings are proceedings which have no existence outside of

6

bankruptcy.") (internal quotations omitted) (citing *In re Gardner*, 913 F.2d 1515, 1517-18 (10th Cir. 1990)); *In re Lewis*, 2004 WL 2191600, at *2 (Bankr. D.Kan. 2004). Matters decided under Rule 3002.1 fall under the statutory definition of a core matter as set forth in § 157(b)(2)(B) concerning the allowance or disallowance of claims against the estate. *In re Raygoza*, 556 B.R. 813, 818-19 (Bankr. S.D.Tex. 2016) (stating a court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, which encompasses determinations regarding Rule 3002.1).

I also find that claims for violation of the discharge injunction under § 524 are core proceedings "arising under" title 11 because § 1334(b) vests original jurisdiction of these matters in the district court and 28 U.S.C. § 157(b)(1) allows reference of the matters to bankruptcy judges. *In re Burns*, 2010 WL 642312, at *2 (Bankr. S.D.Tex. 2010); *see also In re Polysat, Inc.*, 152 B.R. 886, 888 (Bankr. E.D.Pa. 1993) (finding that matters which concern the scope of the discharge injunction are core proceedings and can arise only in the context of a bankruptcy case). It is essential for a bankruptcy court to have jurisdiction to enforce its own orders, including enforcement of a discharge injunction. *In re Texaco Inc.*, 182 B.R. 937, 944 (Bankr. S.D.N.Y. 1995). This Court therefore has core subject matter jurisdiction to hear and decide claims regarding alleged violations of the discharge injunction. I therefore find that both Counts I and II are core matters for which I can enter final judgments.

### ii. *Rooker-Feldman* Doctrine

In their Surreply Brief, Wilmington and Selene argue that under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction over the issues in the Debtor's Complaint. Surreply Br. in Supp. of Mot. of Def. Wilmington Savings Fund Society, FSB, Doing Business as Christiana Trust, Not in its Individual Capacity, but Solely as Trustee for BCAT 2015-13BTT, and Def.

7

Selene Finance, LP, to Dismiss Pl.'s Adversary Compl. ("Wilmington's Surreply Brief") 2-4, ECF No. 27. Wilmington and Selene allege that that the Debtor is "implicitly asking this Honorable Court to review [a] State Court Judgment" in which a default was entered against the Debtor in a mortgage foreclosure case. Wilmington's Surreply Brief 1-3, ECF No. 27.

The *Rooker-Feldman* doctrine bars "state-court losers complaining of injuries caused by state-court judgments" from seeking relief from the judgment from an inferior federal court. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). In order for the *Rooker-Feldman* to apply, the following requirements must be met:

> (1) the federal plaintiff lost in state court;
> (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments;
> (3) those judgments were rendered before the federal suit was filed; and
> (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d at 166. The *Rooker-Feldman* doctrine applies to federal bankruptcy courts as well as district courts. *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009); *In re Ogilvie*, 533 B.R. 460, 465 (Bankr. M.D. Pa. 2015).

It is uncontroverted that the Debtor lost in the state mortgage foreclosure action and that the judgment was rendered on January 13, 2011, before this adversary proceeding was commenced, satisfying the first and third element. Surreply Brief of Plaintiff Opposing Motion of Def. Wilmington Savings Fund Society, FSB, Doing Business as Christiana Trust, Not in its Individual Capacity, but Solely as Trustee for BCAT 2015-13BTT, and Def. Selene Finance LP, to Dismiss Pl.'s Adversary Proceeding ("Plaintiff's Surreply Brief") 3, 4, ECF No. 28. However, I cannot find that the Debtor is complaining of injuries caused by the state-court judgment. Nor can I find that the Debtor is inviting this Court to review and reject the judgment. Rather, the

Debtor alleges in the Complaint that he received a Payoff Statement from Selene on July 12, 2017, seeking to recover fees, expenses and charges. Compl. ¶ 30-31, ECF No. 1. The Debtor requests that Defendants be precluded from presenting evidence or seeking recovery of "funds paid towards real estate tax advances through June 16, 2016," payments of "pre-petition taxes on or about March 14, 2014," as well as funds advanced for insurance and late fees. Compl. ¶ 68-71, ECF No. 1. Similarly, in Count II the Debtor argues that Wilmington and Selene violated the discharge injunction because they "now seek, post-discharge, to collect fees, expenses and charges." Compl. ¶ 76, ECF No. 1.

On this record, I cannot find that the amounts claimed by Wilmington or Selene in the Payoff Statement were all set forth in the state-court foreclosure judgment. Neither can I find that deciding whether the discharge injunction was violated would constitute a review or rejection of the state-court judgment. I conclude that the *Rooker-Feldman* doctrine is not applicable here because the second and fourth elements of the *Great Western* test have not been satisfied. This Court has arising in or under subject matter jurisdiction over the issues presented. To the extent Wilmington and Selene's Motion to Dismiss is grounded upon a lack of subject matter jurisdiction, it is denied.

### B. Wells Fargo's Motion to Dismiss

#### i. Standard to Decide Motion to Dismiss Under F.R.B.P. 7012(b)

Wells Fargo moved to dismiss Count I of the Complaint for failure to state a claim for relief. Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012(b), provides that to survive a motion to dismiss, a plaintiff must state a claim upon which relief can be granted. The Plaintiff must state a claim for relief that is plausible on its face, which "requires more than labels and conclusions, and a formulaic recitation of a cause of

action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *In re Am. Home Mortg. Holding*, 458 B.R. 161, 169 (Bankr. D.Del. 2011). Any factual allegations in a complaint should be treated as true and viewed in a light most favorable to the non-moving party. *Kolar v. Preferred Real Estate Investments, Inc.*, 362 F.App'x 354, 359 n.5 (3d Cir. 2010); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1410 (3d Cir. 1991). However, legal conclusions are not assumed to be correct at the motion to dismiss stage. *Kolar*, 362 F.App'x at 359 n.5; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("threadbare recitals of the elements of action, supported by mere conclusory statements, do not suffice.")).

In deciding a motion to dismiss, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court may also take judicial notice of docket entries in a case, the contents of bankruptcy schedules, and facts not reasonably in dispute. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008); *In re Paolino*, 1991 WL 284107, at *12 n.19 (Bankr. E.D.Pa. 1991). I therefore take judicial notice of the dockets in the underlying Chapter 13 case and in this Adversary Proceeding. At this stage, I view facts in a light most favorable to the Debtor as the non-moving party.

### ii. Elements of a Claim for Sanctions under Rule 3002.1(i)

Rule 3002.1 applies in chapter 13 cases to claims secured by an interest in the debtor's principal residence when "the plan provides that either the trustee or the debtor will make contractual installment payments." Fed. R. Bank. P. 3002.1(a). Pursuant to Rule 3002.1(c):

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

I take judicial notice that the Debtor's confirmed plan provided for direct monthly mortgage payments to Wells Fargo for a mortgage on the real property. Third Amended Plan 3-4, 1:12-bk-04042-RNO ECF No. 83-2. Unless the court orders otherwise, the notice requirements cease to apply when the automatic stay is terminated or annulled with respect to the residence that secures the claim. Fed. R. Bank. P. 3002.1(a). I take judicial notice that Wilmington was granted relief from the automatic stay on June 16, 2016 with respect to the real property. Order Granting Motion for Relief from Stay 1, 1:12-bk-04042-RNO ECF No. 78. The Debtor states that the Defendants seek to recover fees, expenses, or charges that were not timely disclosed to the Debtor, and therefore the Defendants should be sanctioned pursuant to Rule 3002.1(i). Compl. ¶ 63-64, ECF No. 1. Under Rule 3002.1(i), if a holder of a claim fails to provide notice, the court may:

> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

The Debtor argues that Defendants should be precluded from presenting evidence, or seeking recovery, of funds paid towards real estate tax advances, insurance advances, other real estate taxes, and late fees through June 16, 2016, as well as $10,415.76 of pre-petition taxes paid on March 14, 2014. Compl. ¶ 68-71, ECF No. 1. The Debtor requests that these fees be deemed disallowed and uncollectable, that Defendants provide Debtor with a payoff balance reduced by the amount of disallowed fees, and that the Defendants be sanctioned in the amount of

11

reasonable attorney fees for time spent addressing the alleged over-imposition of fees. Compl. 11-12, ECF No. 1. I will review the Complaint to determine whether the Debtor has plausibly pled the required elements as to Wells Fargo.

### iii.    Wells Fargo Does Not Seek Recovery Pursuant to Rule 3002.1(c)

Wells Fargo argues that there are no factual averments that it is presently seeking to recover fees, charges, or expenses subject to Rule 3002.1(c). Mot. of Def. Wells Fargo Bank, N.A. to Dismiss Pl.'s Compl. Pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 7012 ("Wells Fargo Motion to Dismiss") ¶ 3, ECF No. 15. Instead, it argues that the Complaint only alleges that Wilmington and Selene are seeking recovery of such fees, expenses, and charges. Wells Fargo Motion to Dismiss ¶ 4, ECF No. 15.

In the Complaint, the Debtor asserts that he requested and received a Payoff Statement from Selene on June 12, 2017, in which "Selene . . . includes and seeks to recover the following fees, expenses and charges: a. Escrow/Impound Draft . . . b. Corporate Advance(s) Balance . . . c. Unpaid Late Charges." Compl. ¶ 31, ECF No. 1.

Part of the requirement to file and serve a notice under Rule 3002.1(c) is that the claimant asserts the fees at issue are recoverable. I find that the Debtor has not alleged that Wells Fargo is asserting or seeking recovery of any of the above fees.

### iv.    No Requirement to Comply with Rule 3002.1(c)

Wells Fargo advances a second argument, that Debtor's claim for relief is based on a "flawed misunderstanding of the difference between a Notice of Mortgage Payment Change required by Fed. R. Bank. P. 3002.1(b) and a Notice of Postpetition Mortgage Fees, Expenses, and Charges required by Fed. R. Bank. P. 3002.1(c)." Wells Fargo Motion to Dismiss ¶ 7, ECF No. 15. Wells Fargo argues that post-petition escrow payments and advances do not fall within

the meaning of fees, expenses, and charges that are addressed in Rule 3002.1(c). Wells Fargo Motion to Dismiss ¶ 10, ECF No. 15. Wells Fargo states that increases in post-petition monthly escrow payments to account for increases in real estate taxes and insurance premiums are only subject to the notice requirements of Rule 3002.1(b).

Rule 3002.1(b) addresses notice of payment changes, stating that:

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

Wells Fargo therefore argues that it complied with the only provision of Rule 3002.1 that applied to it, subsection (b) governing increases in post-petition escrow obligations and advances. Wells Fargo Motion to Dismiss ¶ 14, ECF No. 15. Wells Fargo states that rights to recover post-petition escrow advances to pay for post-petition taxes and insurance are not subject to the noticing requirements of Rule 3002.1(c), and therefore Count I must be dismissed for failure to state a claim upon which relief can be granted. Wells Fargo Motion to Dismiss ¶ 15, ECF No. 15.

Rule 3002.1 only applies in Chapter 13 cases for claims secured by a security interest in the debtor's principal residence for which a plan provides the debtor will make contractual installment payments. *In re Formosa,* 2018 WL 494416, at *2 (Bankr. E.D.Mich. Jan. 19, 2018). The rule is meant to ensure a debtor is fully informed about amounts owed and is not surprised after leaving Chapter 13. *Id.* Under Rule 3002.1(c), a notice is required to be filed for "*any* fees or expenses claimed by a creditor holding a mortgage on a debtor's principal residence, without regard to whether payment of such fees or expenses is required to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." *Id.* at *3. Rule 3002.1(c) therefore

13

encompasses all fees or expenses that were incurred post-petition in connection with a mortgage holder's claim that are asserted to be recoverable against the debtor or his principal residence. *Id.* However, if a creditor does not assert that the relevant fees or expenses are recoverable against the debtor or the property, then the rule does not apply. *Id.* at \*4. If the holder of a secured claim seeks to recover fees or expenses after the case has been closed that were not properly disclosed, a debtor may seek sanctions under Rule 3002.1(i). *Haynes v. Wells Fargo Bank, N.A.*, 2017 WL 5895160, at \*3 (E.D.Tex. Oct. 30, 2017).

I note that the plan confirmed on May 2, 2013, provides for the cure of pre-petition arrearages of $42,080.82 to Wells Fargo and that post-petition payments would be made to Wells Fargo outside the plan according to the original contract terms. Third Amended Plan 3-4, 1:12-bk-04042-RNO ECF No. 83-2. I also note that Wells Fargo filed Notices of Mortgage Payment Change on December 31, 2012, January 17, 2014, and January 9, 2015 ("Notices"). In the Complaint, the Debtor concedes that Wells Fargo filed these three Notices of Mortgage Payment Change in accordance with Rule 3002.1(b). Compl. ¶ 32, ECF No. 1. Bank documents attached to the Notices filed by Wells Fargo indicate that items paid from the escrow account include "City Tax," "Taxes," and "Hazard Ins[urance]," and that projected payments would be made to Lower Paxton Township, Central Dauphin S.D., and Lititz Mutual Insurance.

During the November 16, 2017 hearing, the Debtor argued that Wells Fargo failed to file notices for miscellaneous fees and charges that were assessed, beyond those included in the notices of mortgage payment change. Transcript 13, ECF No. 26. However, the Debtor failed to make this assertion anywhere in the Complaint. Instead, the Complaint states that several payments on the escrow analysis coincide with payments made to Lower Paxton Township and Central Dauphin School District for real estate taxes, and that "[n]o Notice of Fees, Expenses &

Charges was filed disclosing these payments to advance real estate taxes by the lender." Compl. ¶ 33-44, ECF No. 1. The Complaint again fails to state that Wells Fargo is asserting any fees are recoverable. It only states that "the Response to Notice of Final Cure Mortgage Payment filed by Wilmington and the Selene Payoff Statement dated July 12, 2017 seek late fees assessed to the account for which no Notice of Fees, Expenses & Charges was ever filed." Compl. ¶ 52, ECF No. 1. The Debtor has attached Exhibit B to the Complaint which details a Payoff Statement from Selene including unpaid late charges and other fees. Payoff Statement 1-4, ECF No. 1-3. No payoff statement or other attachments indicate that Wells Fargo is asserting a claim for fees.

In *In re Owens*, the Court considered whether a creditor must comply with Rule 3002.1(c) when it claims that it does not assert fees are recoverable against a debtor. 2014 WL 184781, at *2 (Bankr. W.D.N.C. 2014). In that case, fee assessment notices were mailed to the debtor, which the Court determined was an act asserting recoverability of fees. *Id.* at *3 ("By sending statements to the Debtors stating, 'fees have been assessed to your loan,' PHH has asserted that the fees 'are recoverable against the debtor or the debtor's principal residence.'"). In contrast, here the Debtor does not allege any act by Wells Fargo that constitutes an assertion of recoverability. The Debtor only alleges that Wells Fargo failed to file Notices of Fees, Expenses, and Charges but does not support this conclusion with an assertion that Wells Fargo is seeking recovery of any alleged fees. Further, based on the bankruptcy record, Wells Fargo has disclosed real estate tax advances in its three Notice of Payment Changes filed in the bankruptcy case. Wells Fargo transferred its claim to Wilmington, and the Debtor only states that Wilmington and Selene are seeking late fees assessed to its account.

Viewing the facts in a light most favorable to the Debtor, the non-moving party, I cannot find that the Debtor has pled a plausible claim for a violation of Rule 3002.1(c) or for sanctions

15

under Rule 3002.1(i) against Wells Fargo. Wells Fargo requests dismissal with prejudice. I may grant dismissal with prejudice on the basis of undue delay, bad faith, dilatory motive, prejudice, or futility of amendment. *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993); *In re Sobol*, 545 B.R. 477, 491 (Bankr. M.D.Pa. 2016). Futility means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434-35. I find that based on the facts of this case, amendment would be futile, given that Wells Fargo does not seek to collect the fees in question and has transferred the claim. I grant Wells Fargo's Motion to Dismiss Count I with prejudice. With the Debtor's consent, I will also dismiss Count II as to Wells Fargo, with prejudice.

### v. Safe Harbor Provisions of Rule 3002.1(i) and Judicial Restraint

In its Motion to Dismiss, Wells Fargo further argues that the Debtor's request for relief must be denied because an exception exists under Rule 3002.1(i) when failure to comply with notice requirements is substantially justified or caused the Debtor no harm. Wells Fargo Motion to Dismiss ¶ 16, ECF No. 15. The exceptions under Rule 3002.1(i) would only apply if Wells Fargo violated Rule 3002.1(c). I have already concluded that Wells Fargo is not alleged to have sought recovery of fees, and therefore is not subject to the requirements of Rule 3002.1(c). The principle of judicial restraint provides that if resolution of an issue is dispositive, the case should be resolved on that basis without considering additional issues. *PDK Labs., Inc. v. Drug Enforcement Admin.*, 362 F.3d 786, 799 (C.A.D.C. 2004) (Roberts, J., concurring in part and concurring in judgment) ("This is a sufficient ground for deciding this case, and the cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more — counsels us to go no further."); *Manning v. Upjohn Co.*, 862 F.2d 545, 547 (5th Cir.

16

1989) ("Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented."); *In re Lopatka*, 400 B.R. 433, 440 (Bankr. M.D. Pa. 2009) ("The doctrine of judicial restraint suggests that a court should decide the fewest issues necessary to resolve the subject dispute."). I therefore need not address whether the exceptions under Rule 3002.(i) apply.

### C.    Wilmington's Motion to Dismiss

#### i.    Count I – Request for Sanctions Under F.R.B.P. 3002.1

Wilmington and Selene moved to dismiss Count I for failure to state a claim upon which relief can be granted. Wilmington's Motion to Dismiss ¶ 22, ECF No. 14. Wilmington and Selene argue four bases for dismissal of Count I, stating that: (1) the doctrine of collateral estoppel applies to the claims; (2) the Debtor is barred by res judicata from attacking the validity of the filed notices of payment change; (3) the Debtor has waived the right to dispute the Defendants' response to the final cure notice; and (4) Debtor's claims are barred by the safe harbor provisions of Rule 3002.1(i). Wilmington's Memorandum 4-8, ECF No. 14-1. I will first address the collateral estoppel and res judicata arguments.

##### a)  Collateral Estoppel and Res Judicata

Wilmington and Selene argue that the allegations in Count I of the Complaint are barred by collateral estoppel because the issue of filing notices for fees, expenses, and charges was already raised in the Debtor's response to a motion for relief from automatic stay in the bankruptcy case. Wilmington's Memorandum 4, ECF No. 14-1. Collateral estoppel precludes the re-litigation of a legal issue that was litigated in a prior proceeding and is appropriate when (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar was asserted was a party or in privity with a party to

17

the prior adjudication; and (4) there was a full and fair opportunity to litigate the issue. *Doe v. Hesketh*, 828 F.3d 159, 171-72 (3d Cir. 2016) (citing *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 n. 10 (3d Cir.2002) (internal quotation marks omitted) (quoting *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d Cir.1992))).

Wilmington and Selene further argue that the Debtor is barred by res judicata because of the issues raised in the response to the motion for relief from stay. Wilmington's Memorandum 5-6, ECF No. 14-1. Res judicata, or claim preclusion, bars parties from initiating a suit based on the same cause of action that was brought, or could have been brought, in a prior suit when (1) a final judgment on the merits was reached; (2) the suit involves the same parties or their privies; and (3) the subsequent suit is based on the same cause of action. *Duhaney v. Atty. Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citing *In re Mullarkey*, 536, F.3d 215, 225 (3d Cir. 2008)).

On April 6, 2016, Wilmington filed a Motion for Relief from Automatic Stay with respect to the real property to docket number 62 of the bankruptcy case. In response to the motion, the Debtor filed an Answer with New Matter on April 22, 2016, stating that Wilmington failed to file a notice of fees, expenses, and charges under Rule 3002.1(c) for insurance and real estate tax advances and should be precluded from seeking recovery of any such funds. In his Answer, the Debtor also requested sanctions under Rule 3002.1(i) for failure to file the notices. After a hearing on June 16, 2016, I granted the motion for relief from stay, noting that a motion for relief is a summary proceeding. No testimony was presented at the June hearing.

As noted in *In re Qmect, Inc.*, a "determination . . . made in connection with a motion for relief from stay . . . does not constitute a summary adjudication of the issue for collateral estoppel or res judicata purposes. . . . [but] only so as to decide whether or not to grant the

18

Lenders relief from the automatic stay." 2006 WL 2034353, at *1 n.1 (Bankr. N.D.Cal. 2006);

*see also In re Inofin Inc.*, 2013 WL 209236, at *8-10 (Bankr. D.Mass. 2013) (finding that parties

may present evidence of claims which the court may consider in exercising discretion at a

motion from relief from stay hearing, but that a determination of such claims on the merits is

precluded at that time). Motions from relief from stay are summary proceedings which require a

quick determination and are limited in scope. *In re Philbert*, 340 B.R. 886, 889 (Bankr. N.D.Ind.

2006). They therefore do "not have the same type of res judicata and collateral estoppel effect

that [are] given to final decisions in traditional litigation." *Id.* (citing *Matter of Vitreous Streel*

*Products Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990)); *In re Montemurro*, 580 B.R. 490, 503

(Bankr. N.D.Ill. 2017) (finding that relief from stay proceedings are summary proceedings and

factual determinations do not preclude factual disputes in other broader contexts). In fact, the

Third Circuit has ruled that relying on relief from stay proceedings to support preclusion by res

judicata or collateral estoppel was an error:

> The prior bankruptcy orders respecting the motion to stay were not final
> judgments, and by their nature cannot have preclusive effect on the instant action.
> The hearing on a motion for relief from stay is meant to be a summary
> proceeding, and the statute requires prompt action by the bankruptcy court. 11
> U.S.C. § 362(e).8 Section § 362(e) provides that a bankruptcy court must hold a
> preliminary hearing on a motion to lift the stay within thirty days from the date
> the motion is filed, or the stay will be considered lifted. Id. In addition, relief from
> a stay is obtained by a simple motion, Fed.R.Bankr.P. 4001, and it is a "contested
> matter," rather than an adversary proceeding. *Grella v. Salem Five Cent Sav.*
> *Bank*, 42 F.3d 26, 33 (1st Cir.1994) (citing Fed.R.Bankr.P. 9014; Advisory
> Committee Note to Fed.R.Bankr.P. 7001 ("[R]equests for relief from the
> automatic stay do not commence an adversary proceeding.")).

*In re Mullarkey*, 536 F.3d 215, 226 (3d Cir. 2008).

I find that a motion for relief from the automatic stay is not a final judgment on the merits

and the issues were not actually litigated. The necessary elements of collateral estoppel and res

judicata have not been satisfied and I deny the Motion to Dismiss on these bases.

### b) Waiver Pursuant to Rule 3002.1(h)

Wilmington and Selene's third argument for dismissal is that the Debtor fails to state a claim for relief because his "claims are precluded by waiver" under Rule 3002.1(h). Wilmington's Memorandum 6, ECF No. 14-1. Rule 3002.1(f) is titled Notice of Final Cure Payment and states:

> Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g). If the debtor contends that final cure payment has been made and all plan payments have been completed, and the trustee does not timely file and serve the notice required by this subdivision, the debtor may file and serve the notice.

Subdivision (g), Response to Notice of Final Cure Payment, further provides:

> Within 21 days after service of the notice under subdivision (f) of this rule, the holder shall file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code. The statement shall itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).

Once the Notice of Final Cure Payment is filed by the trustee and a Response is filed by the holder of a claim, the Debtor or the trustee may then move for a determination of final cure and payment under Rule 3002.1(h):

> On motion of the debtor or trustee filed within 21 days after service of the statement under subdivision (g) of this rule, the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts.

On April 27, 2017, the trustee filed a Notice of Final Cure in the bankruptcy case. On May 16, 2017, Wilmington filed a timely Response to the Notice of Final Cure as a supplement to Proof of Claim No. 7, stating that it disagreed the Debtor had paid in full and that $4,870.04 of

20

prepetition defaults and $117,144.24 postpetition mortgage payments remained unpaid, which included $45,549.49 of fees, charges, expenses, escrow, and costs. Wilmington's Memorandum 6, ECF No. 14-1. On May 23, 2017, the trustee withdrew the Notice of Final Cure as filed in error.

To the extent that the Debtor is basing its claims upon Wilmington's Response to the Notice of Final Cure, Wilmington and Selene argue that the Debtor waived its rights to dispute the Response because the 21-day period under Rule 3002.1(h) for which to move for a determination of final cure and payment has expired. Wilmington and Selene state that the Debtor "opt[ed] to allow the bankruptcy case to close, only to reopen it months later in order to file this Adversary Case." Wilmington's Memorandum 6-7, ECF No. 14-1. In the Debtor's Brief Opposing Wilmington's Motion to Dismiss, he states that he "is *not* basing his claim on the null Final Cure Notice" because it was later withdrawn by the trustee, thereby nullifying Wilmington's Response. Br. of Pl. Opposing Mot. of Def. Wilmington Savings Fund Society, FSB, Doing Business as Christiana Trust, Not in its Individual Capacity, but Solely as Trustee for BCAT 2015-13BTT, and Def. Selene Finance, LP, to Dismiss Pl.'s Adversary Proceeding ("Debtor's Brief Opposing Wilmington") 10-11, ECF No. 21 (emphasis added). The Debtor argues the failure to file a motion within 21 days under Rule 3002.1(h) does not constitute a waiver of the opportunity to litigate violations of Rule 3002.1(c). Debtor's Brief Opposing Wilmington, 11, ECF No. 21.

Given the facts of this case, I cannot find that the Debtor's claim is precluded by waiver. The Response to the Notice of Final Cure by Wilmington was filed on May 16, 2017. Seven days later on May 23, 2017, prior to the expiration of the 21-day period for the Debtor to file a motion, the trustee filed a withdrawal of the Notice of Final Cure. This alone nullified the

Case 1:17-ap-00138-RNO    Doc 29    Filed 04/04/18    Entered 04/04/18 13:19:21    Desc
Main Document      Page 21 of 28

Response, and therefore any requirement of the Debtor to file a motion under Rule 3002.1(h) within 21 days would no longer apply. I also find there is an absence of case law finding that a failure to file a motion under Rule 3002.1(h) constitutes waiver of a claim under Rule 3002.1(c) or 3002.1(i). In *In re Bodrick*, the Court examined the language of Rule 3002.1(h) to determine if a Debtor was required to file a motion within 21 days "if she *ever* wanted to dispute that there was a post-petition arrearage." 498 B.R. 793, 800 (Bankr. N.D.Oh. 2013) (emphasis added). The Court found that there was no requirement that such a motion be filed in order to dispute a post-petition arrearage:

> Chase argues that the negative pregnant rule does not apply here and that the canons of statutory construction require the Court to look at the plain meaning of the rule. (Reply at 2–3.) However, a plain reading of Rule 3002.1(h) demonstrates that it does not (i) contain compulsory language requiring the debtor or the trustee to file a motion in response to a creditor's statement that it disagrees with the trustee's notice of final cure payment; or (ii) purport to be the exclusive procedure for determining if the debtor has paid all required post-petition amounts due on his/her residential mortgage. The word "shall" is included in subsections (b), (c), (d) and (g) regarding obligations of the holder of a claim secured by a debtor's principal residence to file certain notices and statements. "Shall" also applies to the trustee's obligation in subsection (f) to file a notice of final cure payment. However, "shall" is noticeably missing from subsection (h), which simply says what is to happen if a motion is filed by either the debtor or the trustee. Consistent with the language of Rule 3002.1(h), the Advisory Committee Note states that the debtor or trustee "may" file a motion to seek a determination from the court.
>
> …
>
> The Debtor was not required by Rule 3002.1(h) to file a motion in opposition to the Cure Response. Accordingly, Chase's attempt to construct a waiver by the Debtor's failure to file a motion and to compel the Debtor's acceptance of the Cure Response as an accurate statement of the status of the Mortgage is unavailing. Including such statement in the Cure Response has no legal effect. The Debtor's failure to file a motion when she had no duty to do so does not constitute waiver.

*Id.* at 800-804. I find that the Debtor's failure to file a motion under Rule 3002.1(h) does not constitute a waiver of its claim. Wilmington and Selene's Motion to Dismiss Count I on this basis is denied.

Case 1:17-ap-00138-RNO    Doc 29    Filed 04/04/18    Entered 04/04/18 13:19:21    Desc
Main Document    Page 22 of 28

### c) Safe Harbor Provisions of Rule 3002.1(i)

Wilmington and Selene's final argument for dismissal of Count I is that Rule 3002.1(i) incorporates a safe harbor provision for failure to file notices of postpetition fees, expenses, and charges which bars Plaintiff's claims. Wilmington's Memorandum 7, ECF No. 14-1. Rule 3002.1(i) addresses the failure of claimant to provide notice:

> If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:
> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Wilmington and Selene argue that the alleged failure to file Notices of Fees, Expenses, and Charges was both substantially justified and harmless, and that the Debtor fails to make specific allegations of harm. Wilmington's Memorandum 7-8, ECF No. 14-1.

Upon examination of Rule 3002.1, I cannot find that the Debtor is required to establish harm or a lack of substantial justification in order to state a claim for relief. Rule 3002.1(i) only states that court *may* preclude the omitted information from being presented as evidence unless the failure to notify was substantially justified or harmless, but under 3002.1(i)(2), the court may still award reasonable expenses and attorney's fees regardless of whether there was harm. The use of the word "may" indicates that a court has discretion. *Jama v. Immig. and Cust. Enf't*, 543 U.S. 335, 346 (2005). Further, the use of "either or" is disjunctive language that means there is a choice of two alternatives. *U.S. v. Rigas*, 605 F.3d 194, 208 (3d Cir. 2010). The final determination of whether to impose sanctions would then be within the discretion of the court, after notice and hearing, taking into consideration whether there was substantial justification or

harm. Such considerations are better addressed at a later stage of the proceeding, with a more fulsome record.

Further, I find that the Debtor has sufficiently pled facts establishing harm in the Complaint. The Complaint alleges that Wilmington and Selene seek to now recover fees, expenses or charges that were not disclosed under Rule 3002.1(c) and that counsel has spent time researching and addressing this issue. Compl. ¶¶ 63, 65, 73-74. Exhibit B to the Complaint also details amounts due for unpaid fees that are allegedly recoverable by Wilmington and Selene. After the Complaint was filed, the real property was sold on August 18, 2017. Debtor's Brief Opposing Wilmington, 4, ECF No. 21. At that time, the Debtor paid off the mortgage loan. Wilmington's Surreply Brief 2, ECF No. 27. The Debtor was allegedly "forced to pay" fees and costs at the settlement of the real property in order to pass along good title to the buyer, which is money that "he should have otherwise had in his pocket." Transcript 16, ECF No. 26.

Viewing the facts in the light most favorable to the Debtor, I find that the Debtor has pled a plausible claim for sanctions under Rule 3002.1(i) against Wilmington and Selene. For the reasons stated above, Wilmington and Selene's Motion to Dismiss Count I is denied.

### ii. Count II – Violation of the Discharge Injunction

Wilmington and Selene move to dismiss Count II of the Complaint for failure to state a claim upon which relief can be granted. Pursuant to 11 USC § 524(a), a discharge operates as an injunction against acts to collect, recover, or offset debt as a personal liability of the debtor. *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154, 115 L. Ed. 2d 66 (1991) (". . . a bankruptcy discharge extinguishes only one mode of enforcing a claim —namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." ). Debtor alleges that Wilmington and Selene seek, post-discharge, to collect

24

fees, expenses, and charges. Compl. ¶ 76, ECF No. 1. Wilmington and Selene state that the allegations are based on a dispute over post-petition amounts due and owing. Wilmington's Memorandum 8-9, ECF No. 14-1. Wilmington and Selene argue that the discharge injunction does not apply to debts provided for under 11 U.S.C. § 1322(b)(5), and further that Debtor fails to establish actual damages as a result of the alleged violation. Wilmington's Memorandum 9, ECF No, 14-1.

Section 1328(a) sets forth exceptions to a Chapter 13 discharge, including an exception for claims provided for in the plan under § 1322(b)(5). 11 U.S.C. § 1328(a)(1); *In re Padilla*, 389 B.R. 409, 419 (Bankr. E.D.Pa. 2008)). It then follows that a claimant cannot violate a discharge injunction under § 524(a) with regards to claims provided for under § 1322(b)(5). *In re Padilla*, 389 B.R. at 419. The Debtor's plan which was confirmed on May 2, 2013, provides for the cure of pre-petition arrearages and states that post-petition payments would be made outside the plan according to the original contract terms. Third Amended Plan 3-4, 1:12-bk-04042-RNO ECF No. 83-2. The Debtor later modified the plan, but the treatment of Wilmington's claim remained the same. Fourth Amended Plan 4, 1:12-bk-04042-RNO ECF No. 86-2. This constitutes a cure and maintenance plan under 11 U.S.C. § 1322(b)(5), which states that the plan may:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

However, the Debtor argues that its claim is not based solely on post-petition payments, but that "Defendants paid pre-petition obligations, as well as significant late fees and corporate advances" for which they are now seeking payment. Debtor's Brief Opposing Wilmington, 15, ECF No. 21. Debtor also argues that Defendants were aware of the discharge order and forced

the Debtor to pay fees, expenses, and charges in order to sell the real property post-bankruptcy. Debtor's Brief Opposing Wilmington, 15-16, ECF No. 21.

At this stage, it cannot be definitely determined whether all these payments were due under the subject note and mortgage. Pretrial discovery should flesh out the factual record. Proof, or the absence of proof, of in personam demands against the Debtor may be dispositive concerning the alleged violation of the discharge injunction.

Viewing the facts in the light most favorable to the Debtor, I find that a plausible claim has been pled for violation of the discharge injunction. Wilmington and Selene's Motion to Dismiss Count II for failure to state a claim is denied.

### iii. Attorney's Fees and Sanctions

In their Motion to Dismiss, Wilmington and Selene state that the Debtor's Complaint is frivolous and they therefore "reserve the right to seek sanctions under Federal Rule of Bankruptcy Procedure 9011," and request an award of attorney's fees. Wilmington's Memorandum 4, ECF No. 14-1; Wilmington's Motion to Dismiss 5, ECF No. 14. Rule 9011(c)(1)(A) sets forth the proper procedure for initiating a motion for sanctions, known as the safe harbor requirements:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

Wilmington and Selene's request for sanctions was not made separate from its Motion to Dismiss as required. There is a failure to describe the specific conduct that violated Rule 9011(b), instead Wilmington and Selene only allege that the Debtor's arguments are "baseless and self-defeating." Wilmington's Memorandum 3-4, ECF No. 14-1. Further, there is no indication that a motion for sanctions was served 21 days before it was filed. The purpose of the safe harbor is to give parties an opportunity to correct errors. *In re Miller*, 730 F.3d 198, 204 (3d Cir. 2013). Strict compliance is required, and if the 21-day period is not provided, the motion must be denied. *Id.* (citing *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008)); *In re Reath*, 2006 WL 3524458, at *5 (Bankr. D.N.J. 2006) ("Because the safe harbor rule is a mandatory provision, the court cannot award sanctions under Rule 9011 . . ."). The request for sanctions is therefore denied.

Generally, regarding the request for attorney's fees, the American Rule provides that in the United States, a prevailing litigant is not entitled to collect attorney's fees from the loser. *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233 (3d Cir. 2003) (citing *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Some exceptions may apply, but only if the litigant prevailed in the underlying action. *Id.* For example, the American Rule may not apply if a contract provides for the payment of attorney's fees or if a federal statute provides for such an award. *In re Florimonte*, 558 B.R. 703, 710 (citing *In re Clemente*, 2010 WL 2758145, at *2 (Bankr. D.N.J. 2010)). I do not find that any exception to the American Rule applies here as to the moving defendants. Further, Wilmington and Selene have not prevailed, but rather their Motion to Dismiss is being denied as to both Counts of the Complaint. Rather than finding the

Complaint frivolous, I have found that plausible claims have been pled. For these reasons, the request for attorney's fees is denied.

## IV.      Conclusion

Wells Fargo's Motion to Dismiss Count I is granted with prejudice and Wilmington and Selene's Motion to Dismiss Counts I and II is denied. Judgment will be entered in accordance therewith.

By the Court,

Robert N. Opel, II, Chief Bankruptcy Judge (BI)

April 4, 2018