# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | | |
| ALLEN J. MEYER | Chapter: | 13 |
| | Case Number: | 1:12-bk-04042-RNO |
| Debtor(s) | | |
| ALLEN J. MEYER | Adversary Number: | 1-17-ap-00138-RNO |
| Plaintiff(s) | | |
| v. | Document No.: | 35 |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2015-13BTT, AND SELENE FINANCE, LP | Nature of Proceeding: | Motion for Summary Judgment |
| Defendant(s) | | |

## OPINION[1]

Allen J. Meyer ("Plaintiff/Debtor") filed a two-count adversary complaint ("Complaint") alleging Wilmington Savings Fund Society, FSB ("Wilmington") and Selene Finance, LP ("Selene") (collectively "Defendants") violated Federal Rule of Bankruptcy Procedure ("FRBP") 3002.1 and the discharge injunction. On October 13, 2018, Defendants filed a Motion for Summary Judgment ("Motion"). For the reasons stated below, Defendants' Motion as to Count I of the Complaint will be granted in part and denied in part, and Defendants' Motion as to Count II of the Complaint will be denied.

---

[1]      Drafted with the assistance of Timothy R. Powell, Esq., Law Clerk.

1

I. **Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

II. **Facts and Procedural History**

Plaintiff filed a voluntary Chapter 13 petition on July 10, 2012, (1:12-bk-04042) and received a Chapter 13 discharge on April 19, 2017. Upon Plaintiff's motion, the case was reopened on July 25, 2017, to commence an adversary proceeding (1:17-ap-00138) against Wells Fargo Bank, N.A. ("Wells Fargo") and Defendants. Plaintiff filed the Complaint on August 5, 2017, alleging in Count I that Wells Fargo and Defendants failed to file and serve notices of fees, expenses, and charges in violation of FRBP 3002.1(c) and seeking sanctions pursuant to FRBP 3002.1(i). Plaintiff further alleges in Count II that Wells Fargo and Defendants violated the discharge injunction pursuant to 11 U.S.C. § 524(a)[2] and § 105 by seeking to collect fees, expenses, and charges post-discharge for which required notices were not filed.

The alleged noncompliance with FRBP 3002.1 relates to a secured claim against real property. On November 15, 2012, Wells Fargo filed Proof of Claim No. 7-1 ("Proof of Claim No. 7") in the main bankruptcy case, stating that it held a secured claim for $135,714.43 with arrearages of $42,080.82 against real property located at 959 Sunnyhill Lane, Harrisburg, PA 17111 ("Residence"). On September 8, 2015, the claim was transferred from Wells Fargo to Defendants. The transfer of claim lists Selene as the mortgage loan servicer for Wilmington.

On July 12, 2017, Plaintiff requested and received a Payoff Statement ("Payoff Statement") from Defendants which disclosed $137,753.77 as the total amount required to pay

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C.§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

2

Case 1:17-ap-00138-RNO   Doc 56   Filed 02/04/19   Entered 02/04/19 13:56:27   Desc
Main Document      Page 2 of 20

off the Defendants' mortgage lien ("Mortgage") on the Residence. On August 18, 2017, Plaintiff settled the sale of the Residence and wired $137,906.98 to Defendants to satisfy the Payoff Statement balance.

On September 21, 2017, Wells Fargo and Defendants filed separate motions to dismiss. On April 4, 2018, I entered an opinion and judgment ("Motion to Dismiss Opinion") granting Wells Fargo's motion to dismiss Counts I and II of the Complaint, with prejudice. *See In re Meyer*, 2018 WL 1663292 (Bankr. M.D. Pa. Apr. 4, 2018). In the Motion to Dismiss Opinion, I also denied Defendants' motion to dismiss Counts I and II of the Complaint. As such, Wells Fargo was dismissed from this adversary proceeding.

On October 13, 2018, Defendants filed a Motion for Summary Judgment in which they deny the presence of any outstanding genuine issue of material fact in this adversary proceeding. On November 8, 2018, Plaintiff filed an answer to Defendants' Motion in which he requested I deny the Motion on both counts.

Briefs have been filed in support of, and in opposition to, the Motion. A hearing was held on November 29, 2018, to clarify the record. The Motion is now ripe for decision.

III. Discussion

    A.    **Standard of Review to Decide a Motion for Summary Judgment Under Federal Rule of Bankruptcy Procedure 7056**

FRBP 7056 makes Federal Rule of Civil Procedure ("FRCP") 56 applicable in bankruptcy proceedings. Pursuant to FRCP 56, summary judgment is appropriate and shall be granted when the movant establishes that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. *Beard v. Banks*, 548 U.S. 521, 529, 126 S.Ct. 2572, 2578 (2006); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552 (1986); *Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir. 1993). At this stage, a court must not

3

Case 1:17-ap-00138-RNO    Doc 56    Filed 02/04/19    Entered 02/04/19 13:56:27    Desc
Main Document    Page 3 of 20

weigh the evidence, or make a determination as to the truth of the matter, but must instead decide if there is a genuine issue for trial. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)). In determining whether or not there is a genuine issue of material fact, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Cliffs-Neddrill Turnkey Int'l-Oranjestad v. M/T Rich Duke*, 947 F.2d 83, 87 (3d Cir. 1991); *Felker v. Christine*, 796 F. Supp. 135, 138 (M.D. Pa. 1992).

When considering a motion for summary judgment, the court must draw all inferences in the light most favorable to the non-moving party. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001); *In re Eury*, 544 B.R. 563, 565 (Bankr. W.D. Pa. 2016). However, the initial burden of proof is on the movant to show that there is no dispute of material fact, which may be established by citing materials on the record such as "depositions, documents, affidavits, stipulations, admissions, and interrogatory answers." *In re Scalera*, 2013 WL 5963554, at *1 (Bankr. W.D. Pa. Nov. 8, 2013). Once the movant has satisfied their initial burden, the burden shifts to the non-moving party to show not merely "that there is some metaphysical doubt as to the material facts" but that there is a genuine issue for trial. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007) (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56 (1986)). If there is a genuine issue of material fact, summary judgment must be denied. As stated in the United States District Court for the Southern District of New York:

> [Summary judgment] is always discretionary, and in cases posing complex issues of fact and unsettled questions of law, sound judicial administration dictates that the court withhold judgment until the whole factual structure stands upon a solid

> foundation of a plenary trial where the proof can be fully developed, questions
> answered, issues clearly focused and facts definitively found.

*Petition of Bloomfield S. S. Co.*, 298 F. Supp. 1239, 1242 (S.D.N.Y. 1969) (citations omitted).

Furthermore, the Federal Rules of Evidence ("FRE") apply to proceedings before United States Bankruptcy Judges. Fed.R.Evid. 1101(a); *In re Barnes*, 266 B.R. 397, 403 (8th Cir. BAP 2001). Pursuant to FRE 201, a court may take judicial notice of a fact that is not subject to reasonable dispute when it is either generally known or capable of being accurately and readily determined by sources whose accuracy cannot reasonably be questioned. *In re LandSource Communities Dev. LLC*, 485 B.R. 310, 315–16 (Bankr. D. Del. 2013) (*citing In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995)). Judicially noticed items may include, but are not limited to, documents from the adversary docket, the docket of the underlying bankruptcy proceeding, and the claims register of the underlying bankruptcy proceeding. *Id.* As such, I take judicial notice of documents filed in the Debtor's underlying bankruptcy case and in this adversary proceeding when considering the Motion.

    **B.    Plaintiff's Amended Responses to Defendants' Request for Admissions Are Applicable to This Summary Judgment Opinion**

Before presenting their arguments as to why I should enter summary judgment in their favor on Counts I and II of the Complaint, Defendants presented an argument as to why Plaintiff's Responses (ECF No. 37-2) and Amended Responses (ECF No. 37-3) to Defendants' Request for Admissions (ECF No. 37-1) should be stricken for failure to comply with FRBP 7036 and relevant caselaw. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 3-8, ECF No. 35-2. However, on November 29, 2018, a hearing was held on Plaintiff's Motion to Amend Responses (ECF No. 37), Defendants' Answer (ECF No. 42), and Plaintiff's Brief in Support (ECF No. 48) whereby I entered an Order (ECF No. 52) granting Plaintiff's Motion to Amend Responses

5

pursuant to FRBP 7036(b). As such, Plaintiff's Amended Responses to Defendants' Request for Admissions are deemed timely filed and applicable as potential sources for issues of material fact in this summary judgment Opinion.

### C. Count I – Alleged Violations of FRBP 3002.1(c) and Request for Sanctions Pursuant to FRBP 3002.1(i)

In Count I of the Complaint, Plaintiff alleges that Defendants violated FRBP 3002.1 when they sought to recover certain fees, expenses, and charges that Defendants or their predecessor-in-interest, Wells Fargo, incurred on Plaintiff's behalf in relation to the Residence. Compl. 9-12, ECF No. 1. Specifically, Plaintiff alleges that Defendants violated FRBP 3002.1(c) because Defendants did not serve Plaintiff with notices of funds paid towards real estate tax advances, insurance advances, other real estate taxes, and late fees from July 10, 2012, through June 16, 2016, as well as $10,415.76 in pre-petition real estate taxes paid on March 14, 2014. *Id.* at 10–11. The Plaintiff alleges that, pursuant to FRBP 3002.1(i), Defendants should be precluded from presenting evidence of such payments and fees, and that Defendants are subject to sanctions for recovering such payments and fees. *Id.* at 10–12. Additionally, Plaintiff requests Defendants provide Plaintiff with a new payoff balance reduced by the amount of any fees, expenses, and charges that I deem disallowed in this adversary proceeding. *Id.* at 12.

FRBP 3002.1 applies in Chapter 13 cases to claims secured by an interest in the debtor's principal residence when "the plan provides that either the trustee or the debtor will make contractual installment payments." Fed. R. Bankr. P. 3002.1(a). The rule is meant to ensure a debtor is fully informed about amounts owed and is not surprised after leaving his Chapter 13 bankruptcy. *In re Formosa*, 2018 WL 494416, at *2 (Bankr. E.D. Mich. Jan. 19, 2018). I take judicial notice that the Plaintiff's confirmed plan provided for direct monthly mortgage payments to Wells Fargo/Defendants for their Mortgage on the Residence, and therefore, FRBP 3002.1

6

applies in this case. Compl. 3, ECF No. 1; see First Am. Plan 3–5, 1:12-bk-04042, ECF No. 32; Third Am. Plan 3–5, 1:12-bk-04042, ECF No. 83-2; Fourth Am. Plan 3–4, 1:12-bk-04042, ECF No. 86-2; see also In Re Hockenberger, 2018 WL 1770172, at *3 (Bankr. N.D. Ohio Apr. 11, 2018) ("The 'cure and maintain' provisions of Debtor's plan thus make Rule 3002.1 applicable in this case.").

Plaintiff alleges Defendants specifically violated FRBP 3002.1(c). FRBP 3002.1(c) – Notice of fees, expenses, and charges, provides:

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

In short, FRBP 3002.1(c) requires a mortgage holder to file a notice for all fees, expenses, and charges that were incurred post-petition that are asserted to be recoverable against the debtor or the debtor's principal residence. *In re Formosa*, 2018 WL 494416, at *3. However, unless the court orders otherwise, the notice requirements of this rule cease to apply when the automatic stay is terminated or annulled with respect to the residence that secures the claim. Fed. R. Bankr. P. 3002.1(a). In this case, both Plaintiff and Defendants have agreed that the operative time frame for the application of FRBP 3002.1 is from July 10, 2012, (i.e., the Plaintiff's main bankruptcy petition date) through June 16, 2016 (i.e., when Defendants were granted relief from the automatic stay with respect to the Residence). Pl.'s Br. in Supp. of Resp. to Defs.' Mot. for Summ. J. 11, ECF No. 45.

Based on the Payoff Statement, Plaintiff alleges Defendants sought to collect fees, expenses, and charges in violation of FRBP 3002.1(c) in an amount not exceeding $45,287.53. Compl. 12–13, ECF No. 1. The Payoff Statement sought payment for the following fees,

7

Case 1:17-ap-00138-RNO    Doc 56    Filed 02/04/19    Entered 02/04/19 13:56:27    Desc
Main Document      Page 7 of 20

expenses, and charges: $31,569.30 in escrow/impound drafts, $13,718.23 in corporate advances, and $1,323.72 in unpaid late charges. *Id.* at 5.

Due to Defendants' alleged violations of FRBP 3002.1(c), Plaintiff requests I fashion relief pursuant to FRBP 3002.1(i). FRBP 3002.1(i) provides that a debtor may seek sanctions if the holder of a secured claim seeks to recover fees or expenses after the debtor's case has been closed that were not properly disclosed. *Haynes v. Wells Fargo Bank, N.A.*, 2017 WL 5895160, at *3 (E.D. Tex. Oct. 30, 2017). Specifically, if the holder of a claim fails to provide notice under FRBP 3002.1(c), the court may, after notice and hearing, take either or both of the following actions:

> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3002.1(i). However, for me to fashion relief pursuant to FRBP 3002.1(i), I first need to determine whether Defendants have violated FRBP 3002.1(c), for which Defendants are requesting summary judgment.

In their Motion, Defendants deny Plaintiff's Count I claims and contend that since there are no genuine issues of material fact to support these claims, Defendants are entitled to judgment as a matter of law. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 9, ECF No. 35-2. In determining whether Defendants or their predecessor-in-interest, Wells Fargo, assessed any of the $45,287.53 amount in violation FRBP 3002.1(c), I will first address the assessed late fees, then the assessed corporate advances, and finally the assessed escrow advances.

8

1.  *Late Fees*

First, Defendants argue that the late fees assessed to the Plaintiff do not violate FRBP 3002.1(c) because they were properly assessed either pre-petition or after Defendants obtained relief from the automatic stay. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 9, ECF No. 35-2. Specifically, Defendants argue that $735.40 of this $1,323.72 amount, representing ten months of late fees imposed at $73.40 per month, was incurred pre-petition and was included on Proof of Claim No. 7. *Id.* Additionally, Defendants argue that the remaining $588.32 represents eight additional late fees, imposed at the same rate, which were incurred after Defendants obtained relief from the automatic stay. *Id.* Furthermore, Defendants accurately allege that when these two amounts are combined, the sum comes out to $1,323.72, the amount listed in late fees assessed on the Payoff Statement. *Id.*

Proof of Claim No. 7 includes $735.40 in late charges. Proof of Claim No. 7, ECF Claims Register No. 7-1, 1:12-bk-04042. Pursuant to FRBP 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." While Plaintiff filed an Objection (ECF No. 23, 1:12-bk-04042) and Amended Objection (ECF No. 24, 1:12-bk-04042) to Proof of Claim No. 7 on December 14, 2012, and December 17, 2012, respectively, Plaintiff withdrew his Amended Objection in open court on January 31, 2013. As such, the $735.40 in late fees listed on Proof of Claim No. 7 is valid and may then be supplemented by FRBP 3002.1. *See* Fed. R. Bankr. P. 3002.1(d) ("A notice filed and served under subdivision (b) or (c) of this rule shall be prepared as prescribed by the appropriate Official Form, and filed as a supplement to the holder's proof of claim."). On September 9, 2015, Wells Fargo transferred its claim to Defendants, who then held

9

Case 1:17-ap-00138-RNO    Doc 56    Filed 02/04/19    Entered 02/04/19 13:56:27    Desc
Main Document      Page 9 of 20

the valid proof of claim for late fees in the amount of $735.40. Notice of Transfer of Claim No. 7, 1:12-bk-04042, ECF No. 59.

As for the remaining $588.32 of the $1,323.72 in late fees provided on the Payoff Statement, a Payment History ("Payment History") previously provided to Plaintiff by Defendants shows that eight additional late fees, totaling $588.32, were assessed outside the operative time frame in which FRBP 3002.1(c) would apply. Mot. for Summ. J., Ex. G 22–25, ECF No. 35-4. Therefore, since $735.40 in late fees were assessed pre-petition as provided on Proof of Claim No. 7 and since $588.32 in late fees were assessed after the Defendants obtained relief from the automatic stay, it is clear that the $1,323.72 in late fees provided on the Payoff Statement did not violate FRBP 3002.1(c).

However, the Complaint requests relief in an amount not exceeding $45,287.53. Compl. 12–13, ECF No. 1. From the amounts listed on the Payoff Statement and in the Complaint, one can come to this amount by adding the $31,569.30 in escrow/impound drafts and the $13,718.23 in corporate advances. Therefore, it appears that the $1,323.72 in late fees listed on the Payoff Statement is not a part of the Complaint. However, because Plaintiff alleges in the Complaint that late fees were assessed to Plaintiff's mortgage account in violation of FRBP 3002.1(c), Plaintiff appears to contend, albeit unclearly, that additional late fees were included in either the escrow/impound drafts amount or the corporate advances amount included on the Payoff Statement. Compl. 11, ECF No. 1.

Plaintiff argues that the Payment History details $735.40 in late fees that were assessed to Plaintiff's mortgage account during the time frame in which FRBP 3002.1 would apply. Pl.'s Br. in Supp. of Resp. to Defs.' Mot. for Summ. J. 11–12, ECF No. 45; *see also* Mot. for Summ. J., Ex. G 22–24, ECF No. 35-4. In looking at the Payment History, there do appear to be ten

additional late fees that were assessed to Plaintiff's mortgage account during the operative time frame in which FRBP 3002.1 would apply. Whether these additional late fees are included on the Payoff Statement as corporate advances or escrow advances remains unknown and is clearly an outstanding issue of material fact.

Viewing the facts in the light most favorable to the Plaintiff, Defendants' Motion as to the $1,323.72 in late fees allegedly assessed in violation of FRBP 3002.1(c) as referenced in Count I of the Complaint is granted as there is no genuine issue of material fact. As such, Plaintiff's request for sanctions pursuant to FRBP 3002.1(i) in regards to *only* the $1,323.72 in late fees as referenced in Count I of the Complaint is denied. However, Defendants' Motion as to the additional $735.40 in late fees assessed between July 10, 2012, and June 16, 2016, in violation of FRBP 3002.1(c) as referenced in Count I of the Complaint is denied. I will now turn to the issue of whether the corporate advances were assessed in violation of FRBP 3002.1(c).

    2.    *Corporate Advances*

Second, Defendants argue that the corporate advances referenced on the Payoff Statement were not subject to FRBP 3002.1(c) and therefore did not require notice thereunder. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 9–10, ECF No. 35-2. Specifically, Defendants argue that after they obtained relief from the automatic stay, fees were assessed against Plaintiff in the amount of $8,646.50. *Id.*; *see also* Mot. for Summ. J., Ex. S, ECF No. 35-6. Defendants also argue that an additional $5,104.55 in fees and costs were incurred pre-petition and were included on Proof of Claim No. 7. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 10, ECF No. 35-2. Furthermore, Defendants contend that when these two amounts are combined, they total $13,751.05 which exceeds what was actually assessed to the Plaintiff as corporate advances on the Payoff Statement (i.e., $13,718.23). *Id.* Because these two sums were assessed pre-petition

11

or after Defendants obtained relief from the automatic stay, Defendants argue these corporate advances are not subject to FRBP 3002.1(c). *Id.* at 9–10.

While the $5,104.55 amount included on Proof of Claim No. 7 is valid pursuant to FRBP 3001(f), I cannot hold that Defendants have a valid claim for corporate advances in an amount of at least $5,104.55 at this stage of the proceedings because neither the Plaintiff nor the Defendants have defined what is encompassed by the term "corporate advances." Defendants' Payoff Statement does not define the term "corporate advances," nor does it or any other filing itemize what makes up the $13,718.23 amount. Compl., Ex. B, ECF No. 1-3. As such, the Complaint merely reiterates that Defendants' Payoff Statement seeks to recover $13,718.23 in corporate advances from the Plaintiff in violation of FRBP 3002.1(c). Compl. 5, ECF No. 1.

At most, I can discern that the term "corporate advances" includes multiple categories of fees and costs incurred by Defendants in regards to their Mortgage on the Residence. The $5,104.55 in alleged corporate advances, which Defendants reference in Proof of Claim No. 7, includes attorney fees, filing fees and court costs, sheriff/auctioneer fees, title costs, and foreclosure service costs, but omits late charges and escrow shortages/deficiencies. Proof of Claim No. 7, ECF Claims Register No. 7-1, 1:12-bk-04042. Additionally, the $8,646.50 assessed to Plaintiff's mortgage account after Defendants obtained relief from the automatic stay also includes several additional categories of fees and costs. Mot. for Summ. J., Ex. S, ECF No. 35-6. Furthermore, Plaintiff argues that the Payment History discloses $3,169.60 in fees/charges/corporate advances, including $735.40 in late fees, which were assessed to Plaintiff's mortgage account in violation of FRBP 3002.1(c). Pl.'s Br. in Supp. of Resp. to Defs.' Mot. for Summ. J. 12, ECF No. 45. With all of this conflicting information, I cannot

12

conclude that the current record adequately itemizes what is included in the $13,718.23 in "corporate advances" for me to grant summary judgment, in whole or in part.

In viewing the facts in the light most favorable to the Plaintiff, I will deny Defendants' Motion in relation to the $13,718.23 in assessed "corporate advances" as referenced in Count I of the Complaint. I will now turn to the issue of whether the escrow advances were assessed in violation of FRBP 3002.1(c).

3.  *Escrow Advances*

Third, Defendants argue that neither they nor their predecessor-in-interest, Wells Fargo, were required to file notices, pursuant to FRBP 3002.1(c), regarding the escrow advances they tendered during the course of the Plaintiff's main bankruptcy case. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 10–11, ECF No. 35-2. Defendants argue that the official form specifically instructs claimants to "not include any escrow account disbursements" in their notices under FRBP 3002.1(c). *Id.* at 10; *see also* Official Form 410S2. Proof of Claim, Supplement 2, 4 Bankruptcy Practice Handbook Official Form 410S2 (2d ed.). Additionally, Defendants point out that the form includes the term "non-escrow" after the lines that apply to "Tax Advances" and "Insurance Advances," indicating that Defendants were not required to file any FRBP 3002.1(c) notices in regards to the assessed escrow advances. *Id.* Furthermore, Defendants argue that since they were not required to file any notices in regards to these escrow advances pursuant to FRBP 3002.1(c), they did not violate FRBP 3002.1. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 10, ECF No. 35-2.

In response, Plaintiff first argues that Defendants have a duty to fully disclose any "out-of-the-ordinary" escrow assessments pursuant to FRBP 3002.1(c). Pl.'s Br. in Supp. of Resp. to Defs.' Mot. for Summ. J. 12–13, ECF No. 45. Second, Plaintiff argues that Wells Fargo's 2014

payment of Plaintiff's delinquent pre-petition real estate taxes in the amount of $10,415.76 to the Dauphin County Tax Claim Bureau undermined his confirmed plan and increased his regular monthly mortgage payment by $928.55 per month.³ And third, Plaintiff argues that neither Defendants nor their predecessor-in-interest, Wells Fargo, had the right to escrow any amounts owed to the taxing authorities on an additional property known as Lot 13A Sunnyhill Lane because neither hold a security interest in Lot 13A Sunnyhill Lane. *Id.*

> In the Mortgage, under Section 3: Funds for Escrow Items, it specifically provides:
>
> Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum … to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; … (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." … If Borrower is obligated to pay Escrow Items directly, … and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount…

Mot. for Summ. J., Ex. B 11, ECF No. 35-3. Therefore, under the Mortgage, Defendants had the right to pay the Residence's real estate taxes and insurance payments, that Plaintiff himself was not making, in order to protect their security interest. These real estate tax payments and insurance payments were then allocable to Plaintiff's monthly escrow payments, to which Wells Fargo filed the appropriate notices. *See* Notices of Mortgage Payment Chance filed on December 31, 2012, January 17, 2014, and January 9, 2015, 1:12-bk-04042. Additionally, FRBP 3002.1(c) is not the appropriate provision to determine whether the notice of a change in escrow payments was served properly. *See* Fed. R. Bankr. P. 3002.1(b)(1) ("The holder of the claim

---

³ *Id.* at 13. I will not discuss this argument in the body of Section III.C.3 of this Opinion because it has no bearing on a summary judgment motion related to an alleged violation of FRBP 3002.1(c).

shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest-rate or escrow-account adjustment, no later than 21 days before a payment in the new amount is due.").

Plaintiff's Complaint alleges that Defendants violated FRBP 3002.1(c) because Defendants did not serve Plaintiff with notices of funds paid towards real estate tax advances, insurance advances, and other real estate taxes from July 10, 2012, through June 16, 2016, as well as $10,415.76 in pre-petition real estate taxes paid on March 14, 2014. Compl. 10–11, ECF No. 1. All of these allegations deal with real estate tax advances and insurance advances, all of which are considered "escrow items" in the Mortgage. Mot. for Summ. J., Ex. B 11, ECF No. 35-3. Therefore, the Defendants' real estate tax advances and insurance advances may be considered "escrow advances" for purposes of the Complaint. The official form for filing a notice pursuant to FRBP 3002.1(c) specifically states to "not include any escrow account disbursements," which includes real estate tax advances and real estate insurance advances. Official Form 410S2. Proof of Claim, Supplement 2, 4 Bankruptcy Practice Handbook Official Form 410S2 (2d ed.). As such, if all the escrow advances complained of were suitable escrow advances as defined in the Mortgage, Defendants could not have violated FRBP 3002.1(c). However, this is unclear at this point in the proceedings.

Plaintiff argues that Wells Fargo and Defendants have a duty to disclose "out-of-the-ordinary" escrow assessments pursuant to FRBP 3002.1(c). Pl.'s Br. in Supp. of Resp. to Defs.' Mot. for Summ. J. 12-13, ECF No. 45. Plaintiff does not define what "out-of-the-ordinary" escrow assessments means, nor does Plaintiff cite any examples. However, it is clear from Column J of the Payment History that there are some escrow advances assessed to Plaintiff's mortgage account that are not included in the same timeframe covered by the three Notices of

15

Mortgage Payment Change filed by Wells Fargo. *Compare* Mot. for Summ. J., Ex. G 22–24, 1:17-ap-00138, ECF No. 35-4 *with* Notices of Mortgage Payment Change filed on December 31, 2012, January 17, 2014, and January 9, 2015, 1:12-bk-04042. If escrow advance assessments were made between July 10, 2012, and June 16, 2016, that were not escrow items covered under the Mortgage, then those assessments would be subject to FRBP 3002.1(c) as they would not be considered escrow account disbursements but would be considered fees, expenses, or charges.

Plaintiff further argues that Wells Fargo and Defendants did not have the right to escrow any amounts owed to the taxing authorities on the property known as Lot 13A Sunnyhill Lane because they do not hold a security interest in Lot 13A Sunnyhill Lane. Pl.'s Br. in Supp. of Resp. to Defs.' Mot. for Summ. J. 13, ECF No. 45. It is clear that the Mortgage covers 959 Sunnyhill Lane but does not mention Lot 13A Sunnyhill Lane. Mot. for Summ. J., Ex. D 36–63, ECF No. 35-3. In looking at the record, I find that there are at least three outstanding material issues of fact related to the escrow advances: (1) whether Defendants had the authority to pay any delinquent real estate taxes on Lot 13A Sunnyhill Lane; (2) whether Defendants paid such delinquent taxes; and, (3) whether Defendants allocated any improper disbursements to Plaintiff's monthly escrow payments in violation of FRBP 3002.1(c).

Due to the questions surrounding what Defendants included in the $31,569.30 in "escrow advances" on the Payoff Statement, the differences between Column J of the Payment History and the three Notices of Mortgage Payment Change, and the questions surrounding Lot 13A Sunnyhill Lane, there are outstanding genuine issues of material fact. Therefore, in viewing the facts in the light most favorable to the Plaintiff, I will deny Defendants' Motion in relation to the $31,569.30 in assessed escrow advances as referenced in Count I of the Complaint. I will now

turn to the issue of whether Defendants violated the discharge injunction pursuant to § 524 and § 105.

### D. Count II – Alleged Violations of the Discharge Injunction Pursuant to § 524

In Count II of the Complaint, Plaintiff alleges that Defendants willfully violated the discharge injunction when Defendants sought, post-discharge through the Payoff Statement, to collect fees, expenses, and charges for which Defendants and their predecessor-in-interest, Wells Fargo, neglected to file the required notices pursuant to FRBP 3002.1(c). Compl. 12–13, ECF No. 1. Plaintiff requests that, pursuant to § 524 and § 105, Defendants be found in contempt and enjoined from continuing to recover such fees, expenses, and charges in an amount not exceeding $45,287.53. *Id.* at 14. Additionally, Plaintiff requests actual damages, punitive damages, and attorney fees and costs. *Id.* at 14–15. In their Motion, Defendants deny Plaintiff's Count II claims and contend that since there are no genuine issues of material fact to support these claims, Defendants are entitled to judgment as a matter of law. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 12–13, ECF No. 35-2.

Pursuant to § 524(a), a discharge operates as a permanent injunction against a creditor's acts to collect, recover, or offset those debts which are a personal liability of the debtor. *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."); *see also In re McNeil*, 128 B.R. 603, 607 (Bankr. E.D. Pa. 1991). Section 1328(a) sets forth exceptions to a Chapter 13 discharge, including an exception for claims provided for in the plan under § 1322(b)(5). 11 U.S.C. § 1328(a)(1); *In re Padilla*, 389 B.R. 409, 419 (Bankr. E.D. Pa. 2008)). It then follows that a claimant cannot violate a discharge injunction under § 524(a) with

regards to claims provided for under § 1322(b)(5). *In re Padilla*, 389 B.R. at 419. Section 1322(b)(5) states that the plan may:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

While § 524 provides that a discharge operates as a permanent injunction, it does not "provide for the allowance of damages for a violation of the discharge injunction." *In re Iskric*, 496 B.R. 355, 363 (Bankr. M.D. Pa. 2013). However, the First Circuit has noted that "bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000) (citations omitted); *Harris v. PHH Mortg. Corp.*, 2015 WL 12953235, at *3 (D. Mass. June 23, 2015). This contempt power of bankruptcy judges is codified in § 105. *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011). Section 105 provides, in part, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title…" 11 U.S.C. § 105(a). The use of this statutory power is completely within the discretion of the bankruptcy court.

In their Motion, Defendants argue that the Payoff Statement merely sought to recover funds to clear Defendants' Mortgage on the Residence (i.e., Defendants' *in rem* claim) so that Plaintiff could pass on good and marketable title to the purchaser of the Residence. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 12, ECF No. 35-2. Defendants also argue that the Payoff Statement was in no way an attempt to collect against the Plaintiff personally. *Id.* Therefore, Defendants contend that the funds collected in reference to the Payoff Statement did not violate the discharge injunction. *Id.* at 11–13.

18

In response, Plaintiff argues that Defendants and their predecessor-in-interest, Wells Fargo, forfeited their right to payment of certain fees, expenses, and charges included on the Payoff Statement due to their alleged noncompliance with FRBP 3002.1(c). Pl.'s Br. in Supp. of Resp. to Defs.' Mot. for Summ. J. 16, ECF No. 45. Since Defendants then included these alleged forfeited fees, expenses, and charges on the Payoff Statement, Plaintiff further argues that this was an act by Defendants to collect from Plaintiff personally in violation of the discharge injunction. *Id.*

As mentioned *supra* in Sections III.C.2–3, I refrained from granting summary judgment in regards to the corporate advance amount and the escrow advance amount included on the Payoff Statement because there were outstanding questions as to some of the fees, expenses, and charges included in those amounts.[4] Additionally, some of these fees, expenses, and charges may have been for payments of pre-petition real estate taxes as well as payments that may not have been due under the subject note or Mortgage. It is undisputed that neither Defendants nor their predecessor-in-interest, Wells Fargo, filed any notices under FRBP 3002.1(c). If required notices were not filed pursuant to FRBP 3002.1(c), then Defendants could no longer collect those fees, expenses, or charges against Plaintiff or his Residence. *In re Ogden*, 532 B.R. 329, 333 (Bankr. D. Colo. 2014). Because Defendants did collect the entire Payoff Statement amount, including the disputed fees, expenses, and charges, it is possible that Defendants violated the discharge injunction. *See In re Ferrell*, 580 B.R. 181, 189 (Bankr. D.S.C. 2017) (ordering that "[a]ny attempt by [creditor] to collect [] the Disputed Amounts or any other postpetition amounts for fees, charges, and or expenses, is and shall be a willful violation of this Order and the discharge injunction of § 524…"); *see also Id.* at 186 n. 8 ("Although there is no basis to award

---

[4] Also, possibly included in one of these two amounts is the $735.40 in additional late fees for which I also refrained from granting Defendants' Motion.

the Debtors' attorney's fees for [creditor's] noncompliance with Rule 3002.1(c), [creditor's] failure to submit any evidence on this issue in response to the Motion supports a ruling that [creditor] is precluded from attempting to collect any fees, expenses, or other charges that [creditor] may have incurred…"). I conclude that granting Defendants' Motion in relation to Count II of the Complaint would be improper because there are outstanding issues of material fact which shall be determined at trial.

In their Motion, Defendants also argue that due to Plaintiff's late Response to Defendants' Request for Admission pursuant to FRBP 7036(a), Plaintiff has ultimately admitted that he has incurred no damages. Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 12, ECF No. 35-2. However, because my November 29, 2018, order allowed Plaintiff to amend his Responses, again Defendants' argument here is moot.

In viewing the facts in the light most favorable to the Plaintiff, I will deny Defendants' Motion in relation to the alleged violation of the discharge injunction pursuant to § 524 as referenced in Count II of the Complaint.

## IV. Conclusion

For the reasons stated above, Defendants' Motion as to Count I of the Complaint is granted in part as to the $1,323.72 in late fees and denied in part as to the additional $735.40 in late fees, the $13,718.23 in corporate advances, and the $31,569.30 in escrow advances. Additionally, Defendants' Motion as to Count II of the Complaint is denied. Judgment will be entered consistent with this Opinion.

By the Court,

*Robert N. Opel II* (signature)

Robert N. Opel, II, Chief Bankruptcy Judge (BI)

February 4, 2019

Case 1:17-ap-00138-RNO    Doc 56    Filed 02/04/19    Entered 02/04/19 13:56:27    Desc
Main Document    Page 20 of 20